**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATTHEW KREUSER, Derivatively on Behalf of GOHEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLINTON P. JONES, TRAVIS J. MATTHIESEN, BRANDON M. CRUZ, JOSEPH G. FLANAGAN, HELENE D. GAYLE, JEREMY W. GELBER, ANITA V. PRAMODA, MIRIAM A. TAWIL, and ALEXANDER E. TIMM, <br><br> Defendants, <br><br> and <br><br> GOHEALTH, INC., <br><br> Nominal Defendant. | Case No. 1:21-cv-02716 <br><br> Hon. Jeremy C. Daniel |

**CORRECTED MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED
<u>MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................................3

    A.    Factual Background ........................................................................................3

    B.    Procedural Background....................................................................................4

    C.    Settlement Negotiations ..................................................................................5

III.    TERMS OF THE PROPOSED SETTLEMENT .......................................................6

IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL..................................8

    A.    Applicable Legal Standards ...........................................................................8

    B.    The Settlement Falls Within the Range of Possible Approval ..........................9

        i.    The Strength of Plaintiff's Claims Balanced Against the Substantial Benefits Provided by the Settlement.....................................9

        ii.    The Complexity, Expense, and Likely Duration of the Litigation .........12

        iii.    The Proposed Settlement is a Product of Arm's-Length Negotiations ...................................................................................13

        iv.    The Opinion of Competent Counsel .....................................................13

        v.    The Stage of the Proceedings and the Amount of Discovery Completed ..........................................................................................14

V.    THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED ....................14

VI.    CONCLUSION.........................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

**<u>Cases</u>** **<u>Page(s)</u>**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*.,
   2011 WL 3290302 (N.D. Ill. July 26, 2011) .................................................................. 12, 13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*.,
   2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ....................................................................... 10

*Arace v. Thompson*,
   2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011) .................................................................. 15

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................................................. 9

*Chaffee v. A & P Tea Co.*,
   1991 WL 5859 (N.D. Ill. Jan. 16, 1991) ......................................................................... 15

*Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*,
   950 F.3d 984 (7th Cir. 2020) ........................................................................................... 10

*In Re Abbott Labs. Deriv. S'holders Litig.*,
   325 F.3d 795 (7th Cir. 2003) ......................................................................................... 9-10

*In re AOL Time Warner S'holder Derivative Litig.*,
   2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ................................................................... 10

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................... 13

*In re CPI Aerostructures S'holder Deriv. Litig.*,
   2023 WL 2969279 (E.D.N.Y. Feb. 14, 2023) .................................................................. 15

*In re Lloyd's Am. Tr. Fund Litig.*,
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................................................... 13

*In re RTI Surgical Derivative Litig.*,
   2021 WL 8314461 (N.D. Ill. Sept. 30, 2021) .................................................................. 15

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ............................................................................................................. 9

*Lace v. Fortis Plastics LLC*,
   2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) ................................................................ 13

*Pfeiffer v. Toll*,
   989 A.2d 683 (Del. Ch. 2010) ......................................................................................... 10

*Susquehanna Corp. v. Korholz*,
   84 F.R.D. 316 (N.D. Ill. 1979) ................................................................................ 9, 13, 15 n.4

*Unite Nat'l Ret. Fund v. Watts*,
   2005 WL 2877899 (D.N.J. Oct. 28, 2005) .................................................................... 14

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*,
   447 F.2d 647 (7th Cir. 1971) ........................................................................................ 9

## **Rules**

Fed. R. Civ. P. 23.1(c) ....................................................................................................... 8

## **Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (4th ed. 2004) ........................................ 9

Pursuant to Federal Rule of Civil Procedure 23.1(c), plaintiff Matthew Kreuser ("Plaintiff") in the above-captioned shareholder derivative action ("Action"), derivatively on behalf of nominal defendant GoHealth, Inc. ("GoHealth" or the "Company"), respectfully submits this Memorandum in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement.

## I.   <u>INTRODUCTION</u>

Plaintiff brings claims in this Action on behalf of GoHealth against the Individual Defendants[1] for alleged breaches of fiduciary duties, unjust enrichment, and waste of corporate assets, and against Defendants Jones, Cruz, and Matthiesen for contribution under Section 11(f) of the Securities Act of 1933 ("Securities Act") and Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"). After extensive, arm's-length negotiations, including multiple in-person mediations and numerous follow-on settlement discussions, the Parties reached an agreement to resolve the Action, as set forth in the Stipulation and Agreement of Settlement dated December 19, 2025 (the "Stipulation" or "Stip.").[2]

Pursuant to the Settlement, GoHealth has agreed to adopt and maintain a series of corporate governance reforms ("Reforms") for at least three years that directly address the wrongdoing alleged in the Action and provide long-term substantial benefits to GoHealth and its shareholders. *See* Stip., Ex. A. GoHealth acknowledges and agrees that the filing, pendency, and settlement of the Action was a material precipitating factor in GoHealth's implementation of the Reforms, and that such Reforms confer substantial benefits on GoHealth and GoHealth's shareholders. Stip.,

---

[1] "Individual Defendants" means collectively Clinton P. Jones ("Jones"), Travis J. Matthiesen ("Matthiesen"), Brandon M. Cruz ("Cruz"), Joseph G. Flanagan, Helene D. Gayle, Jeremy W. Gelber, Anita V. Pramoda, Miriam A. Tawil, and Alexander E. Timm.

[2] Unless otherwise defined herein, all capitalized terms shall have the same meanings as those set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Timothy Brown in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement (the "Brown Declaration") filed herewith.

§IV, ¶2.6.

The Reforms, outlined in full in Exhibit A to the Stipulation, include new and recently implemented practices, positions, committees, charters, and policies including: (i) the appointment of two new directors to GoHealth's Board of Directors ("Board") in June 2022 and January 2023, respectively, the latter of whom is independent, and a higher percentage of independent directors on the Board; (ii) the appointment of a new Chief Operating Officer ("COO") in July 2023; (iii) the appointment of a new Chief Marketing Officer ("CMO") in March 2023; (iv) the creation of the Chief Compliance Counsel ("CCC") position in September 2022; and (v) the maintenance of the Compliance Committee and amendments to its charter in July 2023. *Id.*

The Reforms also provide that GoHealth and/or the Board shall: (vi) increase the frequency of meetings of the Board's Audit Committee; (vii) require GoHealth's Chief Financial Officer to regularly report to the Board; (viii) increase the responsibilities of (a) the COO, who shall now be tasked with, *inter alia*, oversight of all operational aspects of GoHealth, (b) the CMO, who shall now, *inter alia*, annually present to the Board GoHealth's marketing efforts and strategies, including information about the Medicare market, and (c) the CCO, who shall now, *inter alia*, oversee GoHealth's compliance team in employee compliance training and education; and (ix) amend the Compliance Committee Charter to provide, *inter alia*, that the Compliance Committee shall oversee the development and implementation of employee communication and training regarding compliance policies and ethics and compliance issues. *Id.*

Plaintiff's Counsel's recommendation that the Court approve the Settlement is based on years of experience in shareholder derivative litigation and is informed by their extensive independent investigation, careful review and analysis of public and non-public documents, including confidential documents produced to Plaintiff by GoHealth, rigorous evaluation of the

strengths and weaknesses of the claims and defenses, thorough analysis of GoHealth's corporate governance and best practices, and careful evaluation of the value of the Reforms. *Id.* at §II.

Only after agreeing in principle on the material terms of the Settlement and executing a Memorandum of Understanding ("MOU") did the Parties negotiate, with substantial assistance from experienced, nationally reputed neutral mediator, Michelle Yoshida, Esq. of Phillips ADR, Plaintiff's Counsel's attorneys' fees and expenses that would be payable by GoHealth's insurers, subject to Court approval, in recognition of the substantial benefits achieved through the Settlement. Stip., §I.C. Specifically, during a mediation held on October 16, 2025, the Parties negotiated and accepted a double-blind mediator's proposal for GoHealth's insurers to pay $875,000.00 in attorneys' fees and expenses to Plaintiff's Counsel, subject to Court approval ("Fee and Expense Award"). *Id.* Plaintiff's Counsel also seeks a modest service award ("Service Award") in the amount of $2,000.00 for Plaintiff to be paid from the Fee and Expense Award in recognition of Plaintiff's participation and effort in the prosecution of the Action. Stip., §IV, ¶4.3.

At the preliminary approval stage, the Court need only conclude that the proposed Settlement is within the range of resolutions that might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current GoHealth Shareholders, and that the Settlement Hearing should be scheduled. Plaintiff respectfully submits that the Settlement easily meets this standard and requests that the Court enter the Parties' proposed Preliminary Approval Order (substantially in the form of Exhibit B to the Stipulation).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

GoHealth is a health insurance marketplace that utilizes a mixture of websites and licensed

agents to assist individuals in registering for health insurance with carriers. ¶4.[3] The Action alleges that the Individual Defendants breached their fiduciary duties as directors and/or officers of GoHealth by making and/or causing GoHealth to make misrepresentations about, *inter alia*, GoHealth's purported concentration on Medicare segments and GoHealth's purported growth resulting therefrom, in connection with GoHealth's July 2020 initial public offering of stock ("IPO") and in the months following. In particular, the Action alleges that the IPO offering documents ("Offering Documents") falsely represented that GoHealth was best in class with respect to its critically important financial metric, the LTV/CAC. ¶11. The Action also alleges that the Individual Defendants failed to disclose in the Offering Documents and in other representations, *inter alia*, that GoHealth's revenue growth and enhanced LTV/CAC (customer commissions) metrics highlighted in the Offering Documents were the product of an unmaintainable business approach.

The truth emerged on December 2, 2020, when the Individual Defendants revealed at the Evercore ISI HealthCONx Conference that, despite previous representations to the contrary, GoHealth had designated 2020 as an "investment year" for the Company and, as a result, GoHealth had prepared to face lower commissions from insurance carriers as well as "LTV compression" in 2020. ¶140. The same day, the price per share of GoHealth's stock plummeted to an intra-day low of $10.01, over 52.3% lower than IPO price of $21.00 per share. ¶142.

### B. Procedural Background

On May 19, 2021, Plaintiff filed a Verified Shareholder Derivative Complaint on behalf of GoHealth against the Individual Defendants alleging claims for breach of fiduciary duty, unjust

---

[3] Unless otherwise noted, references herein to "¶__" or "¶¶__" are to the Verified Stockholder Derivative Complaint filed by Plaintiff on May 19, 2021. ECF No. 1.

enrichment, and waste of corporate assets, and against certain of the Individual Defendants for contribution under Section 11(f) of the Securities Act and Section 21D of the Exchange Act. (ECF No. 1).

On June 16, 2021, the Parties filed a joint motion to stay the Action pending resolution of the motion to dismiss in the Securities Class Action (ECF No. 7), and the Court so-ordered the motion to stay on June 21, 2021. (ECF No. 9).

On April 5, 2022, the motion to dismiss in the Securities Class Action was denied in part (Securities Class Action, ECF No. 100), and the stay in the Action was lifted.

On June 1, 2022, the Parties filed a second joint motion to stay the Action until the resolution of the motion for class certification in the Securities Class Action (ECF No. 39), and the Court so-ordered the second motion to stay on June 6, 2022. (ECF No. 43).

During the stay of proceedings, Defendants produced tens of thousands of pages of confidential documents to Plaintiff. Stip., §I.B.

### C. Settlement Negotiations

On January 19, 2023, Plaintiff sent a settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms to be implemented by GoHealth that were designed to address what Plaintiff alleges were the governance deficiencies that resulted in the wrongdoing alleged in the Action. Stip., §I.C.

On February 16, 2023, Plaintiff participated in a mediation in Los Angeles, California with the parties in the Securities Class Action, before nationally reputed mediator David Murphy, Esq. of Phillips ADR. *Id.* The Parties did not reach a settlement at the mediation. *Id.* Months later, on July 25, 2023, Plaintiff participated in a second mediation in New York, New York with the parties in the Securities Class Action before Mr. Murphy. *Id.* The Parties did not reach a settlement at this

second mediation either. *Id.* Thereafter, the Parties continued settlement negotiations through the exchange of numerous settlement proposals and counterproposals. *Id.* On June 13, 2025, the Parties executed the MOU, which memorialized the material terms of the Settlement, subject to Court approval. Stip., §I.C.

After the Parties executed the MOU, they began to negotiate the attorneys' fees and expenses that would be payable by GoHealth's insurers to Plaintiff's Counsel in recognition of the substantial benefits achieved for GoHealth through the Settlement. *Id.* On October 16, 2025, the Parties agreed to participate in another mediation in New York, New York, this time before nationally reputed mediator, Michelle Yoshida, Esq. of Phillips ADR, to continue the negotiations of the attorneys' fees and expenses. *Id.* There, the Parties accepted a double-blind mediator's proposal for GoHealth's insurers to pay $875,000.00 in attorneys' fees and expenses to Plaintiff's Counsel, subject to Court approval. *Id.*

## III.  **TERMS OF THE PROPOSED SETTLEMENT**

In consideration of the Settlement, GoHealth has adopted and/or will adopt, implement, and maintain the Reforms outlined in Exhibit A to the Stipulation, which are targeted to address the alleged deficiencies in GoHealth's governance and oversight practices. *See* Stip., Ex. A. The Reforms will be in place for at least three years, offering GoHealth and its shareholders the benefit of substantial, immediate, and lasting improvements to the Company's internal controls, oversight, and policies and practices.

GoHealth acknowledges and agrees that the filing, pendency, and settlement of the Action was a material precipitating factor in the Company's implementation of the Reforms, and that such Reforms confer substantial benefits on GoHealth and GoHealth's shareholders. Stip, §IV, ¶2.6. The Reforms are summarized below:

New Additions to the Board and Enhanced Independence: During the pendency of the Action, GoHealth appointed two new directors, including Vijay Kotte, who also became Chief Executive Officer, and Karolina Hilu, the independent designee of NVX Holdings, Inc. Stip., Ex. A, ¶1(a)-(b). Further, following a period after the Action was filed where the percentage of directors deemed independent was below 66.67%, as of November 2024, the Board is comprised of 2/3 independent directors, which the Reforms contemplate will remain in effect for the designated Compliance Period. *Id*. (c).

Oversight Improvements Concerning Financial Reporting and Internal Controls: GoHealth will now require that its CFO report to the Board, on at least a quarterly basis, GoHealth's current financial position, prospects for future periods, and material changes to costs, expenses, revenue, and/or EBITDA. *Id.* at ¶3. Additionally, the Audit Committee shall meet at least six times annually. *Id.* at ¶2.

Recent Appointment of Key Officers & Enhancements to Duties and Responsibilities:

**CCC**: In September 2022, during the pendency, and substantially because, of the Action, the Company created the position of and hired a CCC. Pursuant to the Settlement, the CCC's responsibilities shall now include, *inter alia*, partnering with GoHealth executives and their team members to evaluate Company products, programs, services, and marketing materials for adherence to compliance policies and/or legal requirements. *Id.* at ¶6.

**COO**: In July 2023, during the pendency of the Action and while settlement negotiations were ongoing, GoHealth named a new COO, and prior to July 2023, the COO position had not been held by anyone at GoHealth since July 2022. In addition to the appointment of the COO in 2023, the Reforms provide that the COO's responsibilities shall now include oversight of: (1) all operational aspects of GoHealth; and (2) the development and implementation of (i) operational

policies, procedures, and processes; and (ii) quality assurance standards and processes related to compliance with regulatory requirements and industry standards related to healthcare operations. *Id.* at ¶4(a)-(b).

**CMO**: In March 2023, during the pendency of the Action, the Company hired a new CMO, whose responsibilities include, *inter alia*, oversight of GoHealth's marketing team. The Reforms further provide enhancements to the CMO position, including that they will now annually present to the Board on GoHealth's marketing efforts and strategies, with information about the Medicare market. *Id.* at ¶5. GoHealth will also require the CMO to meet at least quarterly with the CEO and CFO to review marketing expenses and financial commitments. *Id.*

Compliance Committee Charter and Role: The Compliance Committee amended its charter in July 2023, during the pendency of the Action, and the amendments include that the Compliance Committee shall meet quarterly. The Reforms also provide that the Compliance Committee shall be further tasked with, *inter alia*, oversight of the development and implementation of employee communication and training regarding compliance policies and ethics and compliance issues. The CCC shall also provide a report to the Compliance Committee no less than quarterly. *Id.* at ¶7.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.   Applicable Legal Standards

A derivative action "may be settled... only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Court approval of a derivative settlement involves two steps: (1) determining whether the proposed Settlement appears to fall within the range of possible approval such that notice of the settlement should be provided to shareholders, referred to as preliminary approval; and (2) after such notice has been provided, holding a fairness

hearing to determine whether the settlement is fair, reasonable, and adequate, referred to as final approval. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (4th ed. 2004) (setting forth the approval procedure for settlement of a shareholder derivative action).

In determining whether to approve a proposed derivative settlement, the Court should "weigh the probabilities and possibilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interest of the corporation and all its shareholders." *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co*., 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations removed). The following factors may inform the Court during the final approval stage: (1) the strength of the plaintiff's case on the merits, balanced against the benefits of the settlement; (2) the complexity, length, and expense of continued litigation; (3) whether the settlement negotiations involved collusion; (4) the opinion of knowledgeable counsel; and (5) the stage of the proceedings, including the amount of discovery completed. *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 319-20 (N.D. Ill. 1979). At the preliminary approval stage, the Court need only assess "whether the proposed settlement is within the range of possible approval[.]" *Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980). The Settlement here easily meets this standard.

**B.**     **The Settlement Falls Within the Range of Possible Approval**

     i.     The Strength of Plaintiff's Claims Balanced Against the Substantial Benefits Provided by the Settlement

While Plaintiff believes that his claims are meritorious, establishing liability was not a foregone conclusion. Plaintiff acknowledges the risk that the Action would not have withstood the Defendants' anticipated motion to dismiss, especially given the heightened pleading requirements under Rule 23.1 for demand futility, which is satisfied only under "extraordinary conditions." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991); *see also In Re Abbott Labs. Deriv.*

*S'holders Litig.*, 325 F.3d 795, 807 (7th Cir. 2003) ("[D]emand can only be excused where facts are alleged with particularity which create a reasonable doubt that the directors' action was entitled to the protections of the business judgment rule."). In the absence of a settlement, Plaintiff may need to establish intentional wrongdoing that rises to the level of self-dealing and/or bad faith. Although Plaintiff had access to internal documents produced by GoHealth, Defendants strenuously deny any wrongdoing or breach of duty, and pleading such facts with particularity prior to formal discovery is no easy feat. *See Dorvit on behalf of Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 989 (7th Cir. 2020) ("the ability to demonstrate demand futility *is* a substantive element of the strength of such an action."). Even if Plaintiff overcame this pleading hurdle, litigating the merits of the case, which rely in part on the core operations theory and the alleged failure to conduct proper oversight, still pose significant risks and challenges. *See, e.g.*, *Pfeiffer v. Toll*, 989 A.2d 683, 693 (Del. Ch. 2010).

When balanced against "the uncertain and unknowable benefits of litigation, the benefits of this settlement agreement to [GoHealth and its shareholders] are significant*." Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *5 (N.D. Ill. Feb. 28, 2012). Indeed, federal courts have long recognized the "substantial benefit" conferred on public corporations and their shareholders through the adoption of corporate therapeutics analogous to those effected by the Settlement. *See In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *4 (S.D.N.Y. Sept. 6, 2006) (holding that non-monetary benefits alone can be "substantial enough to merit approval" of a settlement).

The Reforms negotiated specifically target the deficiencies alleged in GoHealth's corporate governance structure that were the subject of the claims in the Action and confer tangible, meaningful benefits to GoHealth and its shareholders, especially considering the risks of no or

delayed recovery for the Company. As noted above, Plaintiff alleges, among other things, that the Individual Defendants: (1) made, or caused GoHealth to make, statements to the market that failed to disclose that GoHealth's revenue growth and enhanced LTV/CAC metrics were the product of an unmaintainable business approach utilized by GoHealth; and (2) failed to implement and/or caused GoHealth to fail to implement adequate oversight and internal controls over its public disclosures. ¶¶21, 181. The Reforms directly address these alleged deficiencies in Board and management oversight to prevent the recurrence of similar breaches, and to strengthen the internal control functions at GoHealth. For example, to ensure that GoHealth's financial metrics and disclosures are accurate, the Reforms provide that the CFO will now report to the Board, on at least a quarterly basis, GoHealth's current financial position, prospects for future periods, and material changes to costs, expenses, revenue, and/or EBITDA. Stip., Ex. A, ¶3. The Reforms also provide for more frequent Audit Committee meetings, now requiring the committee to meet at least six times annually. *Id.* at ¶2. Such action makes it far more likely that the Audit Committee will properly exercise its oversight function, thus ensuring that GoHealth, *inter alia*, accurately discloses its financial metrics moving forward. Further, the Settlement provides for improvements to the COO position, including tasking the COO with oversight of the development and implementation of quality assurance standards and processes related to compliance with regulatory requirements and industry standards related to healthcare operations. *Id.* at ¶4(a); 4(b)(iii).

The Action also alleges that the Individual Defendants failed to oversee the Company's compliance with applicable laws and regulations. In September 2022, materially due to the Action, the Company created and filled a CCC position. The Reforms further provide that the CCC shall now oversee GoHealth's compliance team in performing compliance audits and implementing corrective actions as appropriate. *Id.* at ¶6(a); 6(b)(iii). The Reforms also include significant

changes and improvements to GoHealth's overall governance and leadership structures, thus strengthening the Board's independence and oversight and GoHealth's overall governance practices. For example, the Company hired a CMO in March 2023, and the Reforms provide that the CMO's responsibilities shall be enhanced to include, *inter alia*, quarterly meetings with the CEO and CFO to review marketing expenses and financial commitments. *Id.* at ¶5(a); 5(c)(ii). The CMO shall also make an annual presentation to the Board describing the Company's marketing efforts and strategies, including information about the Medicare market. *Id.* at ¶5(c)(i). Additionally, pursuant to the Settlement, the Company added Vijay Kotte to the Board as a director in June 2022 (Mr. Kotte replaced Defendant Jones as CEO) and added Karolina Hilu to the Board as an independent director in January 2023. *Id.* at ¶1(a)-(b).

These Reforms substantially decrease the likelihood that the misconduct alleged in the Action will be repeated, thus providing substantial benefits to GoHealth and its shareholders.

>    ii.   The Complexity, Expense, and Likely Duration of the Litigation

Plaintiff acknowledges that the Defendants would continue to vigorously dispute the claims asserted and recognizes the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation. *See* Stip., §II. Plaintiff and Plaintiff's Counsel are also mindful of the inherent problems of proof of, and possible defenses to, the claims asserted in the Action. Shareholder derivative actions are notoriously complicated, and the Action would have been no exception. Continued litigation would likely have taken several years. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011) ("Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended."). Even if Plaintiff was to prevail on the claims and establish liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See In re Lloyd's Am. Tr. Fund*

*Litig.*, 2002 WL 31663577, at \*21 (S.D.N.Y. Nov. 26, 2002) (establishing recoverable damages is a "complicated and uncertain process, typically involving conflicting expert opinions," to which "[t]he reaction of a jury … is highly unpredictable."). The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after years of litigation, while ensuring that GoHealth and its shareholders obtain substantial and lasting benefits.

iii.     The Proposed Settlement is a Product of Arm's-Length Negotiations

In determining the fairness of a proposed settlement, courts consider whether the settlement was the product of good faith bargaining at arm's-length without collusion. *See Susquehanna*, 84 F.R.D. at 319-20. As discussed, the terms of the Settlement were only agreed upon after arm's-length negotiations under the auspices of two nationally reputed mediators. *See* Stip., §I.C. Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000). Courts have also found that a mediator's involvement in settlement supports the notion that a settlement was negotiated at arm's-length and is therefore fair and reasonable. *Lace v. Fortis Plastics LLC*, 2015 WL 1383806, at \*3 (N.D. Ind. Mar. 24, 2015) (granting preliminary approval and finding the "Settlement Agreement appears to be the product of earnest, informed, arm's length, and non-collusive negotiations; it has no obvious deficiencies"). This factor supports preliminary approval.

iv.     The Opinion of Competent Counsel

"The court is 'entitled to rely heavily on the opinion of competent counsel'" in approving a settlement. *Am. Int'l Grp.*, 2011 WL 3290302, at \*8. Counsel for the Parties were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses and support the Settlement. *See* Stip., §II, III. As a result of counsel's experience and hard-fought negotiations, which were overseen by two highly experienced nationally reputed mediators, the Parties reached

13

a Settlement that all Parties agree confers substantial benefits on GoHealth and its shareholders and is in GoHealth's best interests, thus weighing in favor of approval. *See*, Stip., §II-III.

     v.    <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

Although the Settlement was arrived at prior to formal discovery, Plaintiff and Plaintiff's Counsel agreed to participate in settlement negotiations and ultimately agreed to the proposed Settlement only after conducting a robust, multi-faceted factual and legal investigation, which included, among other things, reviewing and analyzing tens of thousands of pages of the Company's internal, Board-level documents produced pursuant to a confidentiality agreement, in addition to Company press releases, public statements, SEC filings, media and analyst reports, and pleadings in the Securities Class Action. *See* Stip., §II; *Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *3 (D.N.J. Oct. 28, 2005) (approving settlement pre-discovery where "the parties fully appreciated the merits of this case."). The accumulation of the information discovered through those efforts, as well as counsel's extensive experience litigating similar complex actions, permitted Plaintiff's Counsel to be well-informed in evaluating the strength of the derivative claims and the risks of continued litigation, and to have sufficient information to support their decision that the Settlement is fair, reasonable, adequate, and in the Company's best interests. *Id.*

## V.    <u>THE MANNER AND FORM OF NOTICE SHOULD BE APPROVED</u>

As required by Rule 23.1 and due process, the Parties have agreed to a notice plan that is reasonably calculated to apprise GoHealth shareholders of the terms of the proposed Settlement and provide them with an opportunity to object. Within ten (10) days following entry of the proposed Preliminary Approval Order, GoHealth shall cause the Summary Notice to be published once in *Investor's Business Daily*. GoHealth shall also provide disclosure of the proposed Settlement through, at GoHealth's discretion, in its next Form 10-Q or a Current Report on Form 8-K. Additionally, the Notice and Summary Notice shall include a link to the investor relations

page of GoHealth's website where the Notice and Stipulation with exhibits shall be posted. Stip. at ¶3.2.[4]

The Settlement notice complies with Rule 23.1 and due process and is similar to approved notices in other derivative cases. *See In re RTI Surgical Derivative Litig.*, 2021 WL 8314461, at *1 (N.D. Ill. Sept. 30, 2021) (notice to be filed with the SEC in a Form 8-K or other appropriate filing, posted on the investor relations page of the company's website, and published once in *Investor's Business Daily*); *Arace v. Thompson*, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website); *In re CPI Aerostructures S'holder Deriv. Litig.*, 2023 WL 2969279, at *11 (E.D.N.Y. Feb. 14, 2023) (notice included posting on the company's website and in an SEC filing). Thus, the form and manner of the proposed notice constitute the best notice practicable under the circumstances and satisfy the requirements of Rule 23.1, due process, and applicable law. *See Chaffee v. A & P Tea Co.*, 1991 WL 5859, at *4 (N.D. Ill. Jan. 16, 1991).

## VI.    CONCLUSION

Plaintiff respectfully submits that the Settlement is within the range of approval and requests that the Court preliminarily approve the Settlement, direct the issuance of the notice of the Settlement, and schedule the Settlement Hearing to consider final approval of the Settlement.

Dated: December 23, 2025                    Respectfully submitted,


                                             */s/ Carl V. Malmstrom*
                                             Carl V. Malmstrom

---

[4] The proposed notice of the Settlement describes, *inter alia*: (i) the nature of the litigation, the claims asserted therein, and the Parties' negotiations and reasons for settling; (ii) the Settlement terms; (iii) the procedure for objecting to the Settlement; (iv) the date of the Settlement Hearing; and (v) the payment of Plaintiff's Counsel's attorneys' fees and expenses and the Service Award to the Plaintiff. Stip., Exs. C, D. The proposed Settlement notice therefore "reasonably apprises the members of the class of the terms of the settlement and of the options open to those who wish to dissent." *Susquehanna*, 84 F.R.D. at 324.

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC**
111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Email: malmstrom@whafh.com

Timothy Brown
**THE BROWN LAW FIRM, P.C.**
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 992-5427
Email: tbrown@thebrownlawfirm.net

*Counsel for Plaintiff*